ONEIDA COUNTY, a Wisconsin
municipal corporation, Petitioner-Respondent,

v.

COLLINS OUTDOOR ADVERTISING, INC.,
Respondent-Appellant,

Michael A. WILMOTH, Carl J. Cinkus and
Nancy E. Cinkus, Respondents.

Court of Appeals

*No. 2010AP84. Submitted on briefs February 22, 2011.
—Decided April 26, 2011.*

2011 WI App 60

(Also reported in 798 N.W.2d 724.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Chad R. Gendreau* of *DeWitt Ross & Stevens S.C.*, Madison.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Brian J. Desmond*, corporation counsel, Rhinelander.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J.   Collins Outdoor Advertising, Inc. appeals an order for injunctive relief and forfeitures following a summary judgment determination that Collins illegally constructed a sign within Oneida County's shoreland zoning authority. Collins argues it appropriately relied on the County's zoning map to identify the ordinary high water mark of a nearby lake and determine that the sign's proposed location was outside the County's 1,000 foot zone of shoreland authority. We agree, reverse the order, and direct the circuit court to enter summary judgment in Collins' favor.[1]

## BACKGROUND

¶ 2.   In the spring of 2003, Collins began investigating the possibility of erecting a billboard sign on a business's premises on the west side of State Highway 17 in the Town of Sugar Camp. Sugar Camp was, generally, unzoned. However, Oneida County exercised zoning authority over all land within 1,000 feet of the

---

[1] Collins also presents an equitable estoppel argument, which we need not reach because we reverse on other grounds. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997).

ordinary high water mark of navigable lakes. There were two lakes in the vicinity of the sign's proposed location. Jennie Webber Lake was located east of the highway, while an unnamed lake, identified as 34–16, was south of the proposed location.

¶ 3. Collins' employee, Keith Carson, obtained a lease from the proposed location's landowners. He then obtained the Sugar Camp town foreman's signature on a form indicating the property was unzoned. After submitting a Department of Transportation permit application, that department informed Carson the permit satisfied its criteria. Nonetheless, it directed Carson to obtain Department of Natural Resources (DNR) approval because the location bordered a cedar swamp. A DNR official subsequently inspected and approved the site, but then told Carson to check with the County to ensure it did not claim shoreland zoning authority.

¶ 4. Carson next went to the County's zoning department in June 2003 and spoke with Theresa Kennedy, a permit specialist. Carson and Kennedy reviewed the proposed sign location using several maps, including the official zoning map, as well as aerial photographs. The zoning map's scale was 1 inch = 2000 feet, and the aerial photos' scale was 1 inch = 400 feet. The zoning map showed half-inch gray areas (representing 1,000 feet) extending from the shoreline of most lakes, essentially following the lakes' contours.

¶ 5. Based upon her review of the zoning map and aerial photographs, Kennedy told Carson the proposed sign location would not pose a zoning problem with respect to Jennie Webber Lake, because the sign would be approximately 1,200 feet from the lake. However, Kennedy recommended that Carson take actual measurements to determine whether lake 34–16 was at least 1,000 feet away, and told him it was his responsi-

bility to obtain permission from the neighboring landowners. Carson walked lake 34–16's shoreline and, with a handheld GPS, determined the lake was 1,056 feet away from the proposed location.

¶ 6.   Collins erected the sign in July 2003. In late October, the County's zoning office sent a letter stating there had been complaints and asserting the sign was illegally constructed in a zoned area. After Collins' counsel responded, the County replied with another letter in November, referencing the "large wetland complex that is attached" to Jennie Webber Lake. The County stated that in August it and the DNR "were able to delineate the Ordinary High Water Mark (OHWM)," that the DNR believed the lakebed continued under the highway, and that the sign was therefore only about "ten feet to the OHWM." Collins' counsel responded again in January 2004.

¶ 7.   Years later, in September 2006, the County replied. The County asserted it had conducted another ordinary high water mark determination for Jennie Webber Lake in June 2005, and concluded the mark was "precisely 660 feet from the present location of the sign."[2] The County made that determination by first identifying the ordinary high water mark at a different location on the lake. There, a group of three or four zoning employees, including a former surveyor, agreed on an elevation based on their observations of shoreline rock stains and vegetation. Then, as one employee explained, "We transferred that elevation as far as we could, or back into that wetland complex, and then we just basically measured from there to the best of our ability to where Collins' sign was." The employee ex-

---

[2] According to the County, the DNR refused to certify its ordinary high water mark determination as "official."

plained their difficulty was due to the terrain: "We [were] bushwhacking through a black cedar swamp, or black spruce swamp."

¶ 8.   In August 2008, the County filed a complaint seeking injunctive relief and damages. Both parties filed summary judgment motions. In late 2009, the circuit court denied Collins' motion and granted the County's, reasoning as follows:

> I think the key to the analysis is a term used by both counsel here, and that is burden[. T]he burden to know the law and to make sure one is complying with the law has to be on the builder in a zoning case. I think that is just a basic consideration. If you think about it, it can be no other way, especially on the facts of this case.
>
> If someone was right on the edge of the gray area that surrounds each of the lakes in the county and decided on whatever basis that he or she didn't need to get a permit because the area wasn't zoned, the structure would be built and would probably never be discovered. The county certainly doesn't have the resources . . . to constantly patrol the area around all the lakes in the county to make sure no construction is commenced that needs a permit . . . .
>
> So you could be in a situation where there's an invitation to wholesale violation if you are on the edge of the gray area. All you need to do is look at the map with the idea that later you can claim a good faith belief that you were in an unzoned area and didn't need a permit and you would have a defense.
>
> . . . .
>
> Now, whose job is it to establish the proper measurement? Again, I think that job has to be that of the builder or the land owner. Otherwise, whenever there is a question as to how far something is from the ordinary

high water mark, the county would have to send out some official continuously to do that.

The court ordered Collins to remove the sign, remediate the property, and pay over $25,000 in forfeitures. Collins appeals.

## DISCUSSION

¶ 9. Collins argues that, at the time the sign was erected, the County's official zoning map identified Jennie Webber Lake's shoreline as the ordinary high water mark, and that any subsequent redeterminations cannot render the sign unlawful. We agree. Therefore, the County had no shoreland zoning jurisdiction over any land in excess of 1,000 feet from Jennie Webber Lake's shoreline.[3]

¶ 10. The state requires counties to adopt and enforce shoreland zoning district ordinances. *See* Wis. Stat. § 59.692(1m), (6); Wis. Admin. Code §§ NR 115.01, 115.05(1), (4).[4] " 'Shorelands' means lands within the following distances from the ordinary high-water mark of navigable waters: 1,000 feet from a lake[.]" Wis. Admin. Code § NR 115.03(8); *see* Wis. Stat. § 59.692(1)(b). The ordinary high water mark is defined, in pertinent part, as "*the point on the bank or shore* up to which the presence and action of surface

---

[3] We accept the County's assertion that the ordinary high water mark might vary by a matter of a few feet or inches over time or require on-site measurements in the case of a close call. This case does not, however, involve a dispute regarding merely a few feet, and it is undisputed that the sign is more than 1,000 feet from the lakeshore.

[4] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted. All references to Wis. Admin. Code ch. NR 115 are to the January 2010 version.

221

water is so continuous as to leave a distinctive mark such as by erosion, *destruction or prevention of terrestrial vegetation,* predominance of aquatic vegetation, or other easily recognized characteristic." WIS. ADMIN. CODE § NR 115.03(6) (emphasis added); *see also State v. Kelley,* 2001 WI 84, ¶ 15, 244 Wis. 2d 777, 629 N.W.2d 601.

¶ 11. Every county's shoreland zoning ordinance must include "[m]apped zoning districts and the recording, on an official copy of such map, of all district boundary amendments." WIS. ADMIN. CODE § NR 115.05(4)(i). Further, a county must give the DNR notice of any "appeal for a map . . . interpretation [or] amendment" and of any decision on such matters. WIS. ADMIN. CODE § NR 115.05(4)(h), (hm).

¶ 12. Oneida County has adopted a shoreland zoning ordinance. Subdivision 9.90 A. 3. of the Oneida County Zoning and Shoreland Protection Ordinance provides: "Determinations of navigability and ordinary high water mark shall initially be made by the Zoning Administrator. When questions arise, the . . . Administrator shall contact the Northern Region Service Center of the DNR for a final determination . . . ." *Available at* http://www.co.oneida.wi.gov/docview.asp?docid=4236&locid=135. Additionally, the ordinance parrots the administrative code's notice provisions regarding map challenges and amendments.

¶ 13. The Sugar Camp Zoning map, which Carson reviewed at the zoning department office, provides the following disclaimer:

> Information depicted on this map was interpreted from aerial photography and various other public land records. An attempt was made to accurately represent

the information shown hereon, however, recent changes in the physical and cultural landscape may not be represented. This map is intended for planning and general use only, please refer to the original source documents for detailed information. Please contact the Oneida County Land Information Office if you discover any discrepancies on this map.

Zoning districts represented on this map were provided by Oneida County Planning and Zoning. Zoning districts frequently change and/or may be too small at this scale to accurately depict, therefore use this map only as a general guide. Contact the Zoning department at (715) 369-6130 for exact and current zoning.

In the event of a conflict between the boundaries of the Zoning Districts contained in the Master Zoning District Document and the Oneida County Zoning Map, the boundaries contained in the Master Zoning District Document shall govern and prevail.

¶ 14.　Relying on the map's disclaimer, the County argues it was unreasonable for Carson to rely on the map rather than conduct on-site measurements as he did with lake 34–16. This argument is fallacious on multiple grounds. We address six.

¶ 15.　First and foremost, the County's argument begs the question:　Measure 1,000 feet from where?

¶ 16.　Second, the argument is illogical because the County asserts on the one hand that Carson properly measured from the shoreline of lake 34–16, but assumes that such a measurement from Jennie Webber Lake's shoreline would have been erroneous.

¶ 17.　Third, had Carson conducted measurements, from either Jennie Webber Lake's shoreline or some other location he or his agent independently determined to be the ordinary high water mark, Carson's conclusions would have had no legal force. The

223

ordinance gives landowners no authority to determine the ordinary high water mark. To the contrary, the ordinance places the authority, and burden, on the County and the DNR. Furthermore, as evidenced by the County's and DNR's grossly varied conclusions—setting marks 650 feet apart—the determination can be highly subjective. Thus, the County's assertions, that "[t]he standards for such determinations are clearly set forth in the ordinance," and that "[t]he property owner's rights can easily be ascertained based upon the ordinance language," are unpersuasive.

¶ 18. Fourth, the County's argument charges a nonriparian landowner with knowledge of the shoreline's physical characteristics and may require him or her to traverse swaths of private property to identify the ordinary high water mark.[5]

¶ 19. Fifth, Carson did exactly as the disclaimer instructed, *he contacted the zoning department.* In fact, it was the zoning department that provided and relied upon the map *after* Carson came to the department for a zoning determination. Carson explained:

---

[5] While our premise stands true regardless of whether, here, the land between the highway and the lake is privately owned, we take notice that public records indicate this land is privately owned. *See* Oneida County GIS Mapping, http://ocgis.co. oneida.wi.us/oneida/main.do (last visited Apr. 19, 2011); Oneida County Property Tax Application, http://octax.co.oneida. wi.us/ ONCTax/Taxrtr, search parcel number SU-497 (last visited Apr. 19, 2011). "Oneida County Land Records System is a web-based application that allows users to navigate, query, and report on spatial and non-spatial information, through the use of simple data queries, a pan/zoom interface and other advanced GIS functions. Information is viewable in map and database formats." Welcome to Oneida County Land Records System, *http://www.co.oneida.wi.gov/section.asp?linkid=1802locid=135\* (last visited Apr. 19, 2011).

[Kennedy] looked at this map. We also went and looked at an aerial photograph that was a little bit more closer up, and she got out her scaled ruler and measured from Jennie Webber Lake to where the structure was going to be, the sign, that it was going to be 1,200 feet away. [sic]

Then she went to the unnamed lake and measured it. She goes, you're going to be really close. My suggestion is either contact a surveyor or use a GPS unit and measure from that unnamed lake . . . .

¶ 20.  Sixth, there is no apparent conflict between the zoning map and the "Master Zoning District Document"—presumably, the zoning ordinance. The ordinance states that the zoning authority extends 1,000 feet from the ordinary high water mark. In most cases, the ordinary high water mark of a natural lake will be located at or near the shoreline identified on official maps or visible on aerial photographs. Indeed, here, the map shades an area around Jennie Webber Lake extending 1,000 feet from the shoreline, thus giving the mandatory public notice of the County's asserted jurisdiction. If the public is not entitled to place any reliance on the zoning district boundary maps, we question why they are required, why they must indicate any boundary amendments, or, for that matter, why the DNR must be notified whenever a question arises about the maps. *See* Wis. Admin. Code § NR 115.05(4)(h), (hm), (i).

¶ 21.  While the County attempts to shift the inquiry to measurements of the 1,000 foot line, the proper focus rests on identification of the ordinary high water mark. We reject the notion that a property owner is properly tasked with measuring 1,000 feet from nowhere. When Collins' sign was erected, the County identified the ordinary high water mark as being at or

225

near the lake's established shoreline.[6] Consequently, if Collins' sign was more than 1,000 feet from the shoreline, it was beyond the County's shoreline zoning jurisdiction.

¶ 22.   Before the sign was built, Kennedy, a zoning department permit specialist, concluded the sign was 1,200 feet from Jennie Webber Lake's shoreline. Additionally, the County, after conducting its on-site ordinary high water mark determination two years later, prepared a scale drawing and an aerial photograph with markings to scale. There is an arc scribed on both documents, representing 1,000 feet from the sign. Both exhibits clearly show space between the arc and the lake's shoreline.[7] Thus, it is undisputed that the sign is over 1,000 feet from Jennie Webber Lake's shoreline. The County therefore has no shoreland zoning authority over the sign.

---

[6] Not only was the shoreline established by the official zoning map and aerial photographs, but the shoreline's general location appears to be long-standing. We take notice of the DNR's 1967 lake survey map of Jennie Webber Lake, which shows a shoreline consistent with the shape indicated on the zoning map and visible on the aerial photograph in the record. Jennie Webber Lake – Oneida County, Wisconsin – DNR Lake Map, Oct. 1967, *available at http://dnr.wi.gov/lakes/maps/DNR/1574300a.pdf.* The DNR map also shows an area of "marsh" landward of the shoreline, which approximately coincides with that area Oneida County determined was below the ordinary high water mark, as identified on its aerial photograph in the record. Incidentally, the DNR map's legend includes a symbol for "indefinite shoreline." The map, however, indicates a definite shoreline circumscribing the entire lake.

[7] On both exhibits, the lake side of the shoreline is identified as "open water," while the inland side of the shoreline is identified as "veg. lakebed."

¶ 23.  We say that the County "has" no authority because this case was decided on summary judgment. Collins never conceded the County's ordinary high water mark determination was correct. Rather, it argued that the determination was immaterial because it was not made until long after the sign was erected, and that the map established the ordinary high water mark at least until that time. *See Kelley*, 244 Wis. 2d 777, ¶ 26 n.9 ("[D]ifferent legal issues raise different issues of material facts for purposes of summary judgment in the context of reciprocal motions for summary judgment and . . . an issue of fact that was . . . material under one legal theory might [not] be material to another legal theory."). Collins further argues that the ordinary high water mark is still at the shoreline, because the County never updated the zoning map. The County, however, does not dispute that the sign would be legal as an existing nonconforming structure. Thus, whether the County accurately determined the ordinary high water mark in 2005 is immaterial, and we need not determine the implication of the County's failure to update the map.[8]

*By the Court.*—Order reversed and cause remanded with directions.

---

[8] We highlight another implication of the County's identification of the lake's ordinary high water mark. The County's new determination would effectively redraw Jennie Webber Lake's contours, extending the lakebed hundreds of feet inland. As noted above, that land appears to be privately owned. If given effect, the new determination might deprive landowners of property on which they pay taxes. "The state's title to the lake bed runs to a line which is called the ordinary high-water mark." *State v. McDonald Lumber Co.*, 18 Wis. 2d 173, 118 N.W.2d 152 (1962) (citation omitted); *see also State v. Trudeau*, 139 Wis. 2d 91, 101–04, 408 N.W.2d 337 (1987).